THE MARQUETTE CEMENT MANUFACTURING COMPANY

*v.*

GRANT WILLIAMS.

*Opinion filed October 23, 1907.*

1. FELLOW-SERVANTS—*when injury is not the result of an act of a fellow-servant.* An assurance by the electrician in charge of the electrical apparatus in a manufacturing plant, to his helper, that a certain motor would not be started while the helper was repairing it, is an exercise of the electrician's authority over his helper, and an injury received by the helper, due to the starting of the motor by some unknown person, cannot be regarded as caused by the negligence of the electrician as a fellow-servant of the helper, where the electrician was not assisting in the repair.

2. TRIAL—*when question of electrician's authority to stop motor is one of fact.* Whether the electrician in charge of the electrical apparatus in a manufacturing plant was authorized to order his helper to stop a certain motor and repair it is a question of fact for the jury, where it is shown that after the foreman of the plant had refused the helper's request to stop the motor the electrician went to the foreman and after a few minutes' conversation with him, in the helper's presence but beyond his hearing, ordered the helper to stop the motor and repair it.

3. SAME—*when question of plaintiff's negligence is one of fact.* Whether an electrician's helper was negligent in attempting to repair a motor, which had been stopped for that purpose, without disconnecting the wires so as to preclude the possibility of its starting is a question of fact for the jury, under evidence that it would have been dangerous to disconnect the wires with the current turned on, as it was, and that the motor had been stopped by the method provided and could not be started unless some one threw the switch.

4. EVIDENCE—*plaintiff may prove a general direction as to his duties.* In an action for damages for an injury sustained by the plaintiff while repairing a motor, which was suddenly started by some unknown person, it is proper for the plaintiff to prove that the electrician in charge of the electrical apparatus of the building had told the plaintiff, who was his helper, about a week before the injury, while they were discussing the condition of a certain other motor, that whenever he saw a motor in that condition he should *stop it and fix it at once.*

5. INSTRUCTIONS—*when instruction directing verdict upon the ground of relation of fellow-servants is properly refused.* The fact

that the electrician in charge of the electrical apparatus in a manu-
facturing plant often performs duties with his helper of such char-
acter as to constitute them fellow-servants for the time being, does
not justify an instruction directing a verdict for the manufacturing
company under the fellow-servant rule, in an action by the helper
for an injury received while repairing a motor under the electri-
cian's orders, where the latter had nothing to do with the matter
except to give the order for repairs.

APPEAL from the Appellate Court for the Second Dis-
trict;—heard in that court on appeal from the Circuit Court
of LaSalle county; the Hon. R. M. SKINNER, Judge, pre-
siding.

McDOUGALL, CHAPMAN & BAYNE, and DUNCAN, DOYLE
& O'CONOR, for appellant.

THOMAS KENNEDY, ELMER E. ROBERTS, and BROWNE
& WILEY, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the
court:

Appellee recovered a judgment for $7500 against ap-
pellant, in the circuit court of LaSalle county, for the loss
of his right hand while employed as an assistant to the
electrician in charge of the electrical machinery in appel-
lant's cement works. The Appellate Court for the Second
District affirmed the judgment.

The cause was submitted to a jury upon counts of the
declaration which alleged that the defendant had in its fac-
tory for manufacturing cement a certain motor which fur-
nished power to operate machinery; that the motor was so
situated that its starting machinery was on a lower floor
and not visible from the motor, and with no means of com-
munication from the motor to the starting machinery or
from the starting machinery to the motor; that the motor
became out of condition and repair; that plaintiff was or-

dered by defendant's electrician, who had general charge and supervision over the motor and who was not a fellow-servant of the plaintiff, to stop the motor and repair it, and that plaintiff stopped the motor and proceeded with due care to repair it; and which charged that while he was doing so, and without any warning to him, the defendant negligently permitted the motor to be started, whereby his right hand and wrist were caught in the gearing and cog-wheels and so crushed as to necessitate amputation.

The greater part of the argument in support of the assignments of error is devoted to the proposition that the trial court erred in refusing to direct a verdict for defendant.

The facts material to the issue were but few and the evidence relating to them was in narrow limits, but a bulky and cumbersome record was made by lengthy descriptions of the method and processes of manufacturing cement, which had no relation to the controversy between the parties and which were repeated by different witnesses. We see no good reason for inflicting such immaterial matter upon the jury or the court. The evidence on the part of the plaintiff tended to prove the following material facts: There were a number of motors on the main floor of the cement factory, and one of them operated what was called a "pan conveyor" in the basement. The appliance for starting and stopping this motor was in the basement, where it could not be seen from the motor. To start and stop the motor it was necessary to go down in the basement and throw a switch in order to let the current of electricity into the motor or shut it off. On June 30, 1903, in the forenoon, plaintiff went to this motor and saw that the brush was out of the brush holder and the brush holder was dragging in the commutator and the ring was stopped in the motor. In that condition the motor would soon burn up and destroy valuable machinery. Plaintiff then went to John Coleman, the foreman of the mill, and told him the condition of the motor, but Coleman refused to have the motor stopped to put it

in order, on account of the work that was being done by it at that time. Plaintiff then went to Fred McNeil, the electrician in charge of the electrical department, and told him that if he did not go up there and attend to the motor it would be burned out in a few minutes. McNeil went with plaintiff and looked at the motor and then had a talk with Coleman near by, after which he told the plaintiff to watch the motor a few minutes and then stop it, and he would see that no one would start the motor or interfere with the plaintiff until he had fixed it. McNeil then left and plaintiff went down in the basement and stopped the motor by throwing the switch. William Crockett was in charge, under Coleman, the mill foreman, of the pan conveyor and the appliance for letting clinkers into the conveyor. Crockett had charge of the switch and starting block and was standing near by. After the plaintiff stopped the motor he told Crockett that he was working on the motor and not to start it again until he told him. Plaintiff ran up-stairs and to the motor and commenced to make the necessary repairs. In doing so he reached his hand in to feel whether the oil plug was tight, or not, where it had been leaking oil, and some one started the motor, resulting in the injury.

One reason presented why the court ought to have given the instruction is, that the negligence which caused the injury was the failure of McNeil to see that the motor was not started and his negligence was that of a fellow-servant. There is no evidence as to who started the motor, but Crockett said he did not do it. Whoever it was, there is no claim that he was a fellow-servant of the plaintiff, and under the circumstances the act was a wrongful and negligent one and was an efficient cause of the injury. Crockett was not a fellow-servant of the plaintiff and was the person in the immediate charge of the pan conveyor and switch. He was notified that plaintiff was working on the motor and that it was not to be started until he was through. So far as McNeil was connected with the injury, the evidence did not

tend to prove that he was a fellow-servant with the plaintiff in reference to this matter. The injury did not result from the exercise of authority by McNeil over the plaintiff, but it was the duty of the plaintiff to follow the directions of McNeil as his superior, and the assurance of McNeil that the motor should not be started was not the act or assurance of a fellow-servant but was that of one having authority. While it appears that McNeil and the plaintiff may have worked together sometimes as fellow-servants, they were not co-operating with each other in performing any act of service in relation to this motor.

It is further urged that McNeil had no authority to order the motor shut down. The evidence for the plaintiff was, that after Coleman said he would not shut it down McNeil talked with Coleman a few minutes and then told plaintiff to shut it down. Plaintiff testified that he did not hear the conversation and that they were about twenty-five feet from him. The court could not say that plaintiff did not have good reason to believe McNeil was authorized at that time to have the motor stopped.

Another reason given for insisting that the court ought to have directed a verdict is, that the plaintiff might have disconnected the wires from the motor, which would have rendered it dead, and that he chose a dangerous way of making the repairs. He could have unscrewed the nuts at the top of the motor and have taken out the wires, but there was evidence that that would have been a dangerous thing to do if the current had been turned on, as it was. Aside from that fact, the switch method had been provided for stopping the motor, and when stopped it could not be started except by the voluntary act of some person. The question whether or not the plaintiff was guilty of negligence in employing the method provided was a question of fact and not of law. The court did not err in refusing to direct a verdict.

It is contended that the court erred in admitting improper evidence on the part of the plaintiff, and first, that

the plaintiff was allowed to give his conclusion that McNeil had exclusive control of the electrical department of defendant's works, and thereby to determine the principal fact in dispute. If the statement of the witness was in the nature of a conclusion it worked no harm to the defendant, for the reason that the fact was conclusively proved. The witness had already stated, without objection, that McNeil was in charge of and the boss of the electrical works. McNeil testified that he was in charge of the electrical equipment, consisting of motors, generators, wiring, lighting, etc.; that plaintiff had been assisting him five or six months, and that he gave orders and directions to the plaintiff. If plaintiff had not been permitted to give his conclusions the jury could not have found differently on the question to which the conclusion related. Plaintiff was permitted to give a conversation between himself and McNeil in regard to a motor that got out of condition about a week before, in which McNeil told him that whenever he saw a motor in that condition he wanted him to stop it and fix it at once. The objection is that the conversation referred to another motor, and while that is true, the conversation contained a general direction from McNeil to the plaintiff, which it was proper to prove.

It is next claimed that the court erred in refusing to admit proper evidence offered by the defendant. McNeil, on his direct examination, testified that he did not tell the plaintiff to stay there a few minutes and shut the motor off and he would see that nobody would start the motor or interfere with plaintiff. On cross-examination he was quite uncertain whether he gave plaintiff such an order or not, and on re-direct examination the same question asked on the direct examination was repeated to him. The court sustained an objection to the question but allowed the plaintiff to again take up the same subject and go into the same matter again. After counsel for the plaintiff had examined the witness again on the subject, defendant's counsel took

up the examination again and went over the same matter. Whether the ruling was strictly correct or not, the outcome was that the witness made a full explanation and all the corrections that he desired.

It is urged that the remarks and conduct of the counsel for plaintiff were so improper as to prejudice the jury and require a reversal of the judgment. There were, perhaps, some lapses from the conduct which is regarded as proper and is usually observed in courts of record, but we do not think that anything that was said or done would justify us in reversing the judgment.

The court gave a great many instructions at the request of the defendant but refused three on the subject of fellow-servants, and it is insisted that the court erred in such refusal. The first of those instructions stated that McNeil and plaintiff were fellow-servants, and the court was right in refusing to give it, for the reason that as to the transaction involved in the suit they were not fellow-servants. Plaintiff and McNeil may have had duties and performed services which brought them into that relation, but in this transaction they did not sustain that relation. The second instruction advised the jury that if plaintiff and McNeil were co-operating in the business in hand they were fellow-servants, and it was properly refused because there was no evidence to which it could be applied. The third instruction stated the rules which have been adopted for determining when the relation of fellow-servants exists. While correct as a statement of the law, it would have been misleading in this case. McNeil was a superior servant, clothed with and exercising authority as to the shutting down and repair of the motor, and although he and the plaintiff at times may have been fellow-servants, that fact would not have authorized a finding for defendant, as directed by the instruction.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*